ZENAS THOMPSON *vs.* LEMUEL PAGE.

Several members of an unincorporated religious society mutually agreed in writing to take and pay for the number of shares, affixed to their names, in the stock of a meetinghouse which they proposed to build, and to pay a certain sum on each share to such person as the majority of share holders present at a meeting to be held for that purpose should elect as treasurer ; such treasurer to give bond, with sureties, for fidelity, &c., and to pay over the money received by him to the treasurer that should be elected by the share holders when they should be organized under an act of incorporation which they intended to obtain. A. subscribed for shares in said stock, and B. was chosen treasurer, and gave bond as provided for in said agreement of the subscribers. The subscribers afterwards obtained an act of incorporation, organized under it, and chose C. treasurer. A. refused to pay the sum which he had subscribed, and B. brought an action against him to recover the same. *Held*, that there was a sufficient consideration for A.'s promise, and that the action thereon was rightly brought by B.

ASSUMPSIT on the following agreement, dated January 1st, 1838 : " Whereas, the Second Universalist Society in Lowell are in want of a suitable house of worship, and are desirous that a house be erected as soon as may be, that is, as soon as sufficient funds can be furnished for that purpose ; and whereas said society are not incorporated, but intend to apply for an act of incorporation at the next session of the general court, and are desirous of collecting sufficient funds for erecting said building, so that they may commence operations as soon as the act of incorporation is obtained ; and whereas it is proposed, for the purpose of raising and collecting said funds, to divide the stock of said corporation into shares of twenty-eight dollars each; and to be taken up as soon as may be :    Therefore, for the purposes aforesaid, and in consideration of the mutual promises herein made of and to each other, we the subscribers mutually agree to and with each other, in the manner following ; to wit, to take up the amount of stock, and pay in the same, as hereinafter provided, which is set and affixed to our respective names ; to pay into the hands of a treasurer to be chosen by a vote of the holders of a majority of the stock then subscribed for, that shall be present at a meeting to be called and notified by at least ten members, when they deem expedient, one half the amount of

stock then subscribed for, in three months from the date hereof, and the residue within the three months then next succeeding : Said treasurer, when chosen as aforesaid, is to give bond, with sufficient sureties, to such person or persons as a majority of the subscribers present at said meeting shall direct, to secure the faithful care, judicious management, and prompt payment, of all moneys, paid into his hands by said subscribers, to the treasurer that may be chosen and duly qualified under the act of incorporation, whenever he shall be thereto requested : An organization under said act, if obtained, is to be had as soon as may be, and the moneys then paid in, as provided by this instrument, are to be applied as follows ; to wit, twenty-five dollars of each share is to be applied and appropriated towards the building of the house aforesaid ; the remaining three dollars of each share is to be kept forever as a fund for the purpose of redeeming the shares of any stockholders that may, from time to time, leave said Lowell and take up a permanent residence elsewhere : Provided that not more than $25 shall ever be paid in the redemption of any one share : So much of said house as may be wanted for the purpose of religious worship is always to be for the exclusive use and enjoyment of said Second Universalist Society, they paying reasonable rent therefor : Said treasurer, when chosen as aforesaid, shall have full power, in his own name, to sue and collect the shares of said subscribers, and cause the same to be paid into his hands, unless voluntarily paid according to the terms of this instrument, and to give valid receipts for the same ; provided nevertheless that this instrument may be rendered null and void, at any time, by the assent and concurrence of the holders of at least three fourths of the amount of stock then taken up, such assent and concurrence to be in writing and deposited in the hands of the treasurer : Provided further, that if any person or persons are desirous not to have any interest in or claim for the redemption of their shares, upon the fund for the redemption of shares, as aforesaid, they may, by paying the sum of $25, at the time and in the manner aforesaid, be entitled to a full share, or any number of shares, at the same rate, in the house aforesaid ; but to no interest in or claim on the re-

deeming fund aforesaid ; provided such wish be expressed in writing, with the names, when they subscribe this instrument."

The declaration alleged that the defendant signed said agreement and thereby engaged to take twenty shares of said stock, and pay to such person as should be chosen treasurer, as aforesaid, the sum of $500, at the times aforesaid : That on the 22d of January, 1838, a meeting of the holders of the stock then subscribed for was held, according to the provisions of said agreement and that the plaintiff was then chosen treasurer by a majority of the holders of said stock who were present at said meeting, and that he gave his bond with sureties according to the said agreement : That the defendant, though often requested, had refused to pay the amount of his said subscription, accord ing to the terms thereof.

At the trial before the chief justice, the main allegations in the plaintiff's declaration were admitted or proved, and that equal assessments were laid on all the shares subscribed for, to raise money for the purposes expressed in the agreement ; that the assessments on the defendant's shares amounted to $500, of which he had due and reasonable notice, that demands were made on him by the plaintiff for the amount of the assessments, as they were made, and he refused to pay them. It further was proved, that most of the associates had paid their assessments ; that a house had been built, as proposed ; and that an act incorporating the Second Universalist Society in Lowell was passed March 2d, 1838. (*St.* 1838, *c.* 22.) The incorporated society was organized April 7th, 1838, and a Mr. French was chosen treasurer, before this action was brought, and before the demands aforesaid were made on the defendant.

Upon this case, the defendant contended that the plaintiff was not entitled to recover.

1. Because the instrument declared on does not confer a right of action upon the treasurers ; that if there is any right of action upon it, it is between the parties themselves and cannot be assigned to a third person. 2. That if an action can be maintained at all upon the contract by any treasurer, it is by the treasurer of the incorporated society and not by the plaintiff.

3. That it ought to appear by the declaration for whose use and benefit the action is brought, and does not so appear.

The question being a question of law upon the construction of the contract, and facts not in controversy, a verdict was taken for the plaintiff, subject to the opinion of the court.

If the action can be maintained, judgment to be entered on the verdict ; otherwise, the verdict to be set aside and the plaintiff to become nonsuit.

*L. Williams*, for the defendant.

*Farley* and *G. Parker*, for the plaintiff.

SHAW, C. J. The liability of the defendant, in the present case, depends upon the construction of the agreement executed by him. It recites that the Second Universalist Society in Lowell, which was at the time an unincorporated association, were in want of a suitable house of worship, and were desirous that such a house should be erected as soon as funds could be furnished for that purpose ; it recites also their intention to become incorporated forthwith, and to divide the stock into shares of twenty-eight dollars each, or, at the option of subscribers, to subscribe twenty-five dollars a share, without certain privileges. Then the subscribers, for the purpose aforesaid, and in consideration of the mutual promises therein made, mutually agreed to take the amount of stock subscribed by each, and to pay into the hands of a treasurer, to be chosen, &c., one half in three months, and one half in three months more ; said treasurer to give bond, with surety, to persons to be appointed, &c., to secure the faithful management of the moneys, and the payment of the same to the treasurer to be chosen and qualified under the act of incorporation, when duly requested. It further provided that said treasurer, when chosen as aforesaid, should have full power in his own name to sue and collect the shares of said subscribers, and to cause the same to be paid into his hands, unless voluntarily paid according to the terms of the instrument. The instrument contains some other provisions, not considered essential to the question. It was subscribed by the defendant for twenty shares, and by a great number of other persons. The society was duly incorporated in March following

The plaintiff was chosen treasurer by the associates, and gave bonds, in all respects conformably to the terms and provisions of the agreement.

The question is, whether an action can be maintained by the plaintiff in his own name, for the amount of the defendant's subscription.

A question was made at the argument, whether this was to be deemed a promise to the treasurer, first provided for, to be chosen before the organization, or the treasurer to be chosen by the corporation, when organized. It appears to the court, that this does not admit of a doubt. The obvious purpose was to raise funds, before the act of incorporation, " so," as it is expressed in the agreement, " that they may commence operations as soon as the act of incorporation is obtained." It was therefore an express promise to pay to the treasurer of the associates, when chosen and qualified as therein specified, with an express authority to him to sue for the same, if not paid voluntarily.

We think it is no sufficient objection to the plaintiff's legal right to recover, that he was not the person to whom the promise was made, at the time of subscription. Until some person was chosen a treasurer, it might be considered as an offer only, or a revocable promise ; but if before any revocation of such promise, the plaintiff was chosen and qualified, then it is the same as if the promise were made to the plaintiff by name. Where one offers to pay any person who shall peform a particular service, as a reward for the restoration of lost property, or for information on a particular subject, the person who shall perform the service, or give the information, before the offer is withdrawn, becomes the party to whom the promise is made, as if made to him by name. In *Fisher* v. *Ellis*, 3 Pick. 322, a promise to a parish treasurer, and his successors, for the benefit of the parish, was held to be a promise to each successive treasurer, to be chosen ; and a promise on which an action would lie by a treasurer chosen long after the promise. It is not put on the ground that treasurers of towns and parishes may by statute sue on promises to their predecessors ; though perhaps the

48 *

decision may have been influenced thereby. But that case is a strong authority in favor of the plaintiff in other parts of the case.

There being then an express promise, made by the defendant to the plaintiff, to pay him a sum of money, for the use of the associates, the principal question is, whether there appears to be a sufficient consideration for that promise, to support an action. The general doctrine on this subject was so much considered, and the cases so fully reviewed, in *Amherst Academy* v. *Cowls*, 6 Pick. 427, that it is unnecessary to consider them at large. The object of the associates was to raise a fund, to be invested in a house, in which all the associates were to have an interest, in proportion to the number of their respective shares. This was to be done through the medium of an act of incorporation, in which the defendant was to be included. Such an act of incorporation was in fact obtained shortly after, and before the defendant's promise was rescinded or revoked. By force of this act, and under the denomination of an "associate," the defendant became interested in the stock and property of the corporation. And although the legal interest in such stock and property was in the corporation, yet the defendant had an equitable interest, as *cestui que trust*, for which he had a remedy by bill in equity, if his right should be called in question. When the consideration moves from one or more persons, and by their appointment the promise is made to a third person, for their benefit, it is a good consideration for such promise, and the person to whom such promise is made, may maintain an action upon it. 3 Pick. *ubi sup. McAuley* v. *Billenger*, 20 Johns. 89. If it be said that at the time the subscription was signed by the defendant, it was contingent and uncertain whether an act of incorporation would be obtained, and so the promise was contingent ; one answer has already been alluded to, which is, that even if that circumstance rendered the promise revocable and conditional, yet if not revoked nor rescinded until such act of incorporation was passed, the consideration then became complete, and the promise absolute. Such act of incorporation was obtained before the first demand was made on the defendant. But

we think there is another legal and satisfactory answer. There was a consideration moving from the plaintiff himself in the fact that he gave bond, with sureties, to persons appointed by the associates, conditioned to take care of the fund so to be collected, and account for the same, and pay over the amount to the treasurer of the corporation, when requested. Now, if no act of incorporation should ever be obtained, the plaintiff would have been liable, as trustee, to account for the money thus received, to the associates respectively, according to their respective proportions. The adequacy or sufficiency of the consideration is not material to this question. The giving of a bond with sureties is a burdensome service, and if done at the request and for the benefit of another, is a good legal consideration for an express promise. Suppose, for instance, that a contract were made, in these terms : B. in consideration that A. will give bond with surety to appropriate and pay over certain moneys, to be contributed by himself and the rest of the alphabet, to a use, in which B. has an interest, promises to pay A. a certain sum, and A. in pursuance of this promise gives bond accordingly ; we think it is a good legal consideration for the express promise by B. to pay a sum of money. Whether, therefore, it be regarded as a promise made to the plaintiff by appointment of the associates for their benefit, and on a consideration moving from them, and consisting of a benefit to the defendant, in the interest he was to have in the corporate fund ; or as a promise made to the plaintiff on a consideration moving from himself; the court are of opinion that it was a valid promise, upon which this action may be maintained.